UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF **RED APPLE IPHONE WITH A BLUE CASE,** CURRENTLY LOCATED AT **4501 ELMORE RD., ANCHORAGE AK 99507** | 3:19-mj-00652-DMS<br>Case No. 3:19-mj-00071-DMS-- |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Andrew E Grow, Jr., being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—one (1) cellular telephone—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Postal Inspector with the United States Postal Inspection Service (USPIS), in the Anchorage, Alaska, Domicile, and have been since July 2016.

3. During my time as a Postal Inspector, I have worked on Prohibited Mail Narcotics (PMN). These investigations generally entail the use of the United States Mail and common carriers such as Federal Express (FedEx), United Parcel Service (UPS), and DHL, to introduce, transport, and ship illegal narcotics. During this time, I have aided on interdiction investigations, and have become familiar with the methods commonly used by drug traffickers to introduce drugs into Alaska via the United States mail system and other common carriers. I have been involved in

MAR - 4 2019

1

cases that investigate and prosecute defendants for violations of Titles 18 and 21 of the United States Code.

4. I attended and graduated from a three-month Basic Inspector Training (BIT) academy operated by the United States Postal Inspection Service (USPIS) in October 2015. While attending BIT academy, I received training and instruction on the methods for concealing narcotics in the mail system. In an extension of BIT training, and subsequent to graduation from BIT academy, I received several months of additional training and instruction under the tutelage and supervision of senior Postal Inspectors

5. Prior to my employment with the USPIS, I was employed for six years by the Federal Air Marshal Service (FAMS) as a Federal Air Marshal (FAM). While employed for the FAMS I was assigned to the Visible Intermodal Prevention and Response Team (VIPR) and was the radio support technician for the Washington Field Office. Prior to being employed by the FAMS, I was employed for four years as a police officer for three different police departments: Seaside Heights Police Department; Ocean City Police Department; and Somers Point Police Department in New Jersey. I was assigned to the bicycle unit as the team leader for my shift at the Seaside Heights Police Department. While employed for the Ocean City Police Department I was assigned to the community policing unit where we focused on alcohol and narcotics being sold and/or used by underage kids. I graduated in May, 2007 from the Ocean County Police Academy (OCPA) in Class 88 as a Basic Police Officer.

6. I have a bachelor's degree in Criminal Justice that I received in December 2008 from the Richard Stockton College of New Jersey in Galloway, NJ.

7. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8. The property to be search is a Red Apple IPhone with a Blue Case, hereinafter the "Device." The Device is currently located at 4501 Elmore Road, Anchorage AK 99507.

9. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying the electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

10. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code Sections 846, and 841 have been committed and that the items described in Attachment A are evidence, fruits, instrumentalities, and proceeds of those violations are located at the location described in the accompanying search warrant. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

11. The Device is currently in the lawful possession of the Anchorage Police Department (APD). It came into the APD's possession in the following way: taken during the execution of a warrant. APD will transfer possession of the device to the United States Postal Inspection Service (USPIS).

12. The Device is currently in storage at 4501 Elmore Road, Anchorage Alaska 99507. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the APD.

MAR - 4 2019

## AGENT'S EXPERTISE

13. Based upon my training, experience and participation in these and other financial/drug trafficking investigations, and based upon my conversations with other experienced law enforcement agents and officers, with whom I work, I know the following:

   a. I know that the distribution of controlled substances is frequently a continuing activity over months and years. Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, such as a distributor of a legal commodity would purchase stock for sale. Similarly, such drug traffickers will maintain an "inventory" which will fluctuate in size depending upon the demand for and the available supply of the product. It has been my experience that drug traffickers keep records of their illegal activities not only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances. The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money. Such records may be found in the form of **text messages on cell phones, or emails on targets' computers, tablets, digital cameras or other portable media devices, or smart phones.**

   b. It is common for members of drug trafficking organizations to maintain records evidencing their illegal activities including books, ledgers, receipts, notes and other papers relating to the transportation, ordering, possession, sale and distribution of drugs and the collection and transportation of drug proceeds. I also know that the

aforementioned records are frequently maintained in the drug trafficker's residence and sometimes in the traffickers' vehicle(s), **computers, tablets, smart phones, digital cameras or other portable media devices**.

c. I know that evidence of excessive wealth is probative evidence of crimes involving greed, to include the distribution of controlled substances. Therefore, receipts showing the expenditure of large sums of money and/or the expensive assets themselves are evidence of drug trafficking. I also know that drug traffickers commonly keep the expensive assets themselves and/or documentation of the purchase of the asset (receipts, warranty cards, etc.) in or about their residences, and sometimes in their vehicles, businesses, **smart phones, tablets, computers or portable media devices.**

d. It is increasingly common for members of drug trafficking organizations to utilize direct cash deposits into a co-conspirator's bank accounts to facilitate the movement of U.S. currency throughout the trafficking organization's area of operations. I know that members of drug trafficking organizations will utilize nominee depositors to disguise the origination of the funds and to break up the amount being deposited by any one person. I know that the actual owner of the currency will commonly provide the nominee depositor with handwritten information concerning the intended recipient's name and account number and amounts of money to be deposited. I also know that, in an attempt to keep track of the proceeds, it is common for the drug traffickers and/or nominee depositors to maintain copies of the deposit slips. I also know that the aforementioned items are frequently maintained in the drug trafficker's and/or nominee depositor's residence, businesses, or vehicles. In addition, drug

5

MAR - 4 2019

Case 3:19-mj-00652-DMS   Document 1-1   Filed 03/04/19   Page 5 of 15

traffickers can keep such records on their **smart phones, tablets, computers, or portable media devices.**

e. It is common for members of drug trafficking organizations to utilize fraudulent identification in order to purchase airline tickets, send wire transfers, rent residences and storage facilities, and subscribe for telephone/cellular telephone service. I also know that it is common for drug traffickers to keep fraudulent identification nearby and easily accessible to facilitate their flight upon the discovery of their illegal activities by law enforcement. I also know that the aforementioned items are frequently maintained in the drug trafficker's residence, businesses, or vehicles. Records concerning the purchase of airline tickets, rental contracts, and telephone/cellular service are frequently found on the **smart phones, tablets, computers, or portable media devices.**

f. It is common for drug trafficking organizations involved in the distribution of controlled substances to maintain equipment and supplies (i.e. scales, baggies, cutting agents) on hand over a lengthy period of time. At times, certain retail stores provide customers with loyalty cards that can track a customer's purchases. Frequently, these stores send emails to the members of their loyalty programs that can be found on drug traffickers' **computers, tablets, and smart phones.**

g. It is common for members of drug trafficking organizations to attempt to recruit couriers to transport drugs and/or U.S. currency throughout the trafficking organization's area of operations. I know that often times a courier's handler will provide the courier with handwritten notes regarding travel itinerary, hotel information, and contact telephone numbers prior to the courier's departing on the


MAR - 4 2019

6

trip to transport drugs and/or money. I also know that oftentimes organizations will pay a flat rate (i.e. $1,000 per kilogram of cocaine) plus expenses for the couriers. Therefore, oftentimes the couriers will keep handwritten itemized lists of expenses and/or receipts, in order to be reimbursed. I also know that the aforementioned items are frequently maintained in the couriers' residence or residences and vehicles belonging to members of the drug trafficking organization. In addition, records of airline and hotel purchases are frequently found in email on drug traffickers' **smart phones, tablets, computers, digital cameras or other portable media devices.** Evidence of visiting travel websites can often be found through forensic analysis of these devices.

h. It is common for members of drug trafficking organizations to take or cause to be taken, photographs and/or videos of themselves and their co-conspirators and associates. It is also common for members of drug trafficking organizations to take or cause to be taken, photographs and/or videos of themselves and/or their co-conspirators with controlled substances, large sums of money, guns and expensive assets (i.e. jewelry, luxury cars). I also know that the aforementioned items are frequently maintained in drug traffickers' residences or businesses, or in their **computers, tablets, smart phones, digital cameras and other portable media devices.**

i. It is common for members of drug trafficking organizations, in an attempt to disguise their identities and illegal activities, to use pre-paid cellular telephones and pre-paid long distance calling cards. I know that oftentimes the only way to connect a subject with a particular pre-paid cellular telephone or calling card is to seize the phone or

calling card from the trafficker or his residence. Analyses of these pre-paid cellular phones often provide evidence of a drug trafficker's customers and suppliers, as well as accomplices. This information typically can be found in the address books, call logs and text messages of **wireless cellular telephones, smart phones, computers, tablets and portable media players.**

j.  It is common for members of a drug trafficking organization to attempt to legitimize their profits from the distribution of drugs. To accomplish these goals, drug traffickers utilize foreign and domestic banks and the bank's attendant services to include cashier's checks, safe deposit boxes, and money drafts. Drug traffickers will also utilize the purchase/sale of real estate to legitimize their profits. I also know that the records of the aforementioned transactions are frequently maintained in the drug trafficker's residence, business, or vehicles, and also stored on computers, **portable media devices,** and tablets of drug traffickers.

k.  It is common for members of drug trafficking organizations to utilize businesses, both real and fictitious, to conceal both the distribution of drugs as well as to conceal the source of their illegal income. It is common for drug traffickers to possess business licenses and articles of incorporation for these businesses, even if the businesses exist only on paper. I also know that these records and documents are frequently maintained in the drug trafficker's residence or business, as well as on drug traffickers' computers, **portable media devices**, and tablets.

l.  In my experience, I have found that the same information or data can be restored/recovered from a forensic examination of a computer as you will find following an examination of portable media devices such as thumb drives, removable

8

hard drives, or even digital cameras. This rationale is true mainly because devices such as thumb drives and removable hard drives are commonly used to save computer internal hard drive space and the data or information maintained within is more commonly pulled from a computer to begin with. For instance, while digital cameras provide the ability to back up documents, records, or lists upon their own built in media storage space.

m. The statutory provisions to which the current investigation relates include; (1) Title 21, United States Code, Section 841 (a) (1) and 846, the Distribution of Controlled Substances, the Possession of Controlled Substances with Intent to Distribute, as well as the conspiracy to commit those violations, and (2) Title 18 United States Code Sections 1956, 1957, Money Laundering, and conspiracies to do the same and aiding and abetting the same. I am familiar with the provisions of these statues and based upon my training and experience, I believe that the data described in this affidavit and which is sought by this application for search warrant is evidence of violations under Title 21, United States Code, Section 841 (a) (1) and 846 and Title 18 Sections 1956 and 1957.

**BACKGROUND OF INVESTIGATION**

14. On January, 29, 2019, while researching Postal Databases, USPIS deemed Priority Mail Express Parcel EE397557375US (herein after referred to as the Subject Parcel) addressed to "Sarah Sanders, 3838 Indiana St, Anchorage, AK 99503" from "Dennis Sanders, 801 S. Alvarado St, Los Angeles, CA 90057," as suspicious because it was mailed from Los Angeles, CA and the postage of $102.00 was paid or with cash.

15. On January 30, 2019, USPIS located the Subject Parcel and utilized a trained narcotics detector dog examined the Subject Parcel and did indicate, that is, exhibited a change in behavior consistent with the presence of an odor of a controlled substance the canine is trained to recognize.

16. On January 30, 2019, Federal Search Warrant 03:19-MJ-00066-DMS was executed on the Subject Parcel. The Subject Parcel was found to contain packing peanuts, a pair of shoes, a small toy motorcycle, and a plastic toy King Kong. Inside the toy King Kong were three separate bundles, each bundle was covered with multiple layers of dryer sheets, carbon paper, and saran wrap. The contents of the bundles was approximately 1,009.67 gross grams of a hard, dark-colored substance which field-tested positive for heroin.

17. On January 30, 2019 Federal Beeper Order 03:19-MJ-00067-DMS was granted for the installation and monitoring of an electronic alerting device and tracking device in the Subject Parcel. The actual narcotics were removed from the subject parcel (except for a representative sample of the original narcotics) and replaced with "sham" narcotics in preparation for a controlled delivery the following day. In addition, clue spray was added to the parcel which will glow green when a black light is put on it.

18. On January 31, 2019 at 1:05 pm, a controlled delivery of the Subject Parcel was conducted by an undercover Postal Inspector. The Subject Parcel was delivered to the recipient address, 3838 Indiana St, Anchorage, AK, 99503. The undercover Postal Inspector was greeted by a male, known to law enforcement as Darron SANDERS, and he accepted the Subject Parcel.

19. On January 31, 2019, at approximately 1:27 pm, the installed tracking and monitoring device indicated that the box had been opened. As Law Enforcement Officers were making their approach to the front door of the residence they observed SANDERS attempting to

MAR - 4 2019    10
Case 3:19-mj-00652-DMS   Document 1-1   Filed 03/04/19   Page 10 of 15

leave the residence with the Subject Parcel. When SANDERS saw Law Enforcement, he ran back inside of his residence, and went upstairs. Law enforcement officers then entered the Subject Residence pursuant to Federal Beeper Order 03:19-MJ-00067-DMS. Officers immediately made contact with an unknown male subject upon making entry and he was taken into custody. Officers attempted to call out SANDERS but he refused to comply with Law Enforcement's commands to come down the stairs and out of the residence. At approximately 1:35 pm SANDERS started to comply and was taken into custody shortly thereafter.

20. Officers located the Subject Parcel upstairs and in the bathtub. The parcel was wet as if SANDERS had been washing it in the bathtub and one end had been torn open, but the contents were still inside. It is a known tactic for narcotics traffickers to wash their hands after opening a narcotics parcel to remove any evidence of clue-spray. There was no clue-spray found on SANDERS or the other male subject's hands.

21. On January 31, 2019, a state search warrant was applied for and granted for 3838 Indiana St, Anchorage, AK 99503. As a result of the search warrant, the Device was located on the living room coffee table.

22. The other male at the residence was interviewed and told agents that the Device was SANDERS IPhone.

23. In your Affiant's experience, the amounts of heroin seized from the Subject Parcel are indicative of distribution and are not consistent with personal use quantities.

24. Based on my training and experience as a Postal Inspector, and involvement in this investigation, your affiant knows that drug traffickers commonly use cellphones to communicate and facilitate the distribution of controlled substances. These cellphones are their primary means of communication. Cellphone's used by drug traffickers and associates frequently contain

evidence regarding the dates and times of criminal associates' visits, purchasing narcotics, and contacts. Cellphone's often contain evidence of the sale of illegal substances, their location of the sale and other evidence pertinent to this investigation.

25. Based on the information provided herein, I submit there is probable cause to search the Device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

27. *Forensic Evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

>   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of

MAR - 4 2019

12

peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when they were used.

d. The process of identifying the exact electronically stored information on storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual

13

information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when it was used, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

29. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve

MAR – 4 2019

the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
ANDREW E. GROW, JR.
Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to before me
on March 1, 2019:

_____
UNITED STATES MAGISTRATE JUDGE
MATTHEW M. SCOBLE
U.S. Magistrate Judge